UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL JOHN LOPOS,<br>    Plaintiff,<br><br>v.<br><br>MARK HUGHES<br>    Defendant. | No. 16-cv-2063 (MPS) |

## RULING ON THE DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Michael John Lopos filed this action against Defendant Mark Hughes, who the complaint describes as "Dean of Students of the East Haven Public Schools," alleging that Hughes failed to hire him for an in-school suspension paraprofessional position in retaliation for his past litigation against the Meriden Board of Education, in violation of the First Amendment and 42 U.S.C. § 1983, and because of his age and race. Lopos seeks $15,000 in damages, or half of a paraprofessional's salary. Defendant moves to dismiss Lopos's claims for retaliation, race discrimination, and age discrimination. (ECF No. 44.) Lopos has moved for judgment on the pleadings. (ECF No. 45.)

For the reasons discussed below, Defendant's motion to dismiss is GRANTED. Plaintiff's motion for judgment on the pleadings is DENIED.

### I. Factual Allegations

Lopos made the following factual allegations in his original complaint and in his motion to amend. (ECF No. 1; ECF No. 34.) Lopos alleges that Hughes failed to hire him for the position of in-school suspension paraprofessional because of Lopos's prior charges of discrimination and lawsuits. (ECF No. 1 at 3.) One of these lawsuits was against the Meriden Board of Education and the Meriden School Superintendent Mark Benigni. (*Id.*; ECF No. 34 at 1.) Lopos alleges that

1

Hughes "knew about the content of the Plaintiff[']s claim and lied to the EEOC that he had no knowledge of the litigation brought against The Meriden Board of Education on a sworn affidavit submitted to the EEOC." (*Id*.) Lopos alleges that Hughes was at one point the president of the Meriden Board of Education and Benigni's best friend and was aware of Lopos's prior lawsuit. (ECF No. 34 at 1.)

On July 16, 2015, Lopos filed a discrimination charge with the EEOC, alleging that Hughes failed to hire Lopos in retaliation for prior charges of discrimination and lawsuits filed in federal court. (ECF No. 1 at 3.)

On August 21, 2017, Lopos filed a motion to amend, seeking to add claims of race discrimination and age discrimination to his retaliation complaint. (ECF No. 34.) The Court granted the motion to amend and allowed Lopos to file an amended complaint to add those claims, but Lopos did not do so. (ECF No. 39.)

In the motion to amend, Lopos alleges that the East Haven Schools administration team interviewed five candidates for the paraprofessional position. (ECF No. 34 at 1.) The five candidates included one white male, two Hispanic males, and two African-American males. (*Id*.) Lopos also alleges that "not one Senior Citizen" was interviewed for the position. (*Id*.) Lopos does not allege his race, ethnicity, or age in the complaint or the motion to amend.

Lopos left blank the box on the application that he could fill out to indicate his race. Lopos alleges that "[t]he rationale for leaving the box blank was to promote the interviewing and hiring process to [be] based on the applicant's qualifications, credentials and content of character and not on the color of one's skin or ethnicity." (*Id*.) Lopos was not interviewed for the paraprofessional position. Lopos also alleges that he was "not interviewed and considered less favorably because of his age." (*Id*.)

2

Lopos makes factual allegations that do not appear in the complaint or the motion to amend in other filings in this case. In his "Motion for In Camera Review of Documents," Lopos alleges that the Meriden Board of Education offered him a settlement in his prior lawsuit, and that the Board, of which Hughes was the president, "had to vote and approve the settlement." (ECF No. 49.) In two of his "motion[s] to compel discovery documents," Lopos alleges that "Plaintiff was the most qualified candidate for the position of In-School Suspension Paraprofessional with the East Haven schools." (ECF No. 50 and 52.) Lopos also attaches exhibits to a "motion to strike affidavit of Defendant Mark Hughes," and his opposition brief, which he argues support his claim that Hughes was aware of his past litigation. (ECF No. 51 at 3-4.)

## II. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts all of the complaint's factual allegations as true when evaluating a motion to dismiss. *Id.* at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant [a] defendant[']s motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge

3

its claims across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *Iqbal*, 556 U.S. at 680).

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). District courts "employ the same standard applicable to Rule 12(b)(6) motions to dismiss" in deciding a motion for judgment on the pleadings. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). This requires "[a]ccepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party," and granting judgment on the pleadings "if the moving party is entitled to judgment as a matter of law." A party is entitled to judgment on the pleadings "only if it has established that no material issue of fact remains to be resolved." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks and citation omitted).

Because Mr. Lopos appears pro se in this case, the Court construes his pleadings liberally to raise the strongest arguments they suggest. *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).

### III. Discussion

#### A. Retaliation

The Court construes Plaintiff's complaint as alleging a claim for retaliation in violation of the First Amendment, which requires a plaintiff to establish that "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015).

Defendant moves to dismiss the retaliation claim on the basis of the third element, arguing that Lopos failed to plead facts suggesting that there was a causal connection between the adverse

4

action and protected speech, but does not challenge Lopos's allegations as to the first two elements. (ECF No. 33-1 at 4-5.)

To plead causation in the context of a retaliation claim, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id*. It can also be shown "directly through evidence of retaliatory animus directed against a plaintiff by the defendant." *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987).

Here, Lopos has not plausibly alleged a connection between the adverse action—the alleged failure to hire him for the paraprofessional position—and his protected activity—previously suing the Meriden Board of Education. First, Lopos does not allege that Hughes was involved in deciding which candidates to interview or hire for the paraprofessional position, or that Hughes is generally involved in hiring at all. There are thus no facts from which the Court could draw the reasonable inference that Hughes was involved in deciding whether to hire Lopos. Lopos has not plausibly alleged that Hughes was even aware of his application for the position and therefore has not alleged that he was not hired because Hughes retaliated against him due to his past litigation.

While Lopos alleges that Hughes "knew about the content of the plaintiff's claim" against the Meriden Board of Education (ECF No. 1 at 3), he provides the alleged facts to further support this claim throughout other filings, such as his discovery motions, rather than in the complaint or the motion to amend. Even in those filings, however, Lopos provides at most conclusory assertions that Hughes served as president of the Meriden Board of Education and approved an earlier settlement between Lopos and the Meriden Board and therefore was aware of Lopos's prior

5

lawsuits against the Meriden Board (ECF No. 34 at 1; ECF No. 49 at 1). Lopos does not provide any facts from which the Court could draw the reasonable inference that Hughes's awareness of Lopos's prior litigation involving the Meriden Board caused him not to be interviewed or hired for the paraprofessional position.

Second, Lopos neither alleges when he sued the Meriden Board of Education nor when he was passed over for the paraprofessional position. Thus, Lopos has not set forth facts to plead that there was, at a minimum, a temporal connection between his prior lawsuits and the fact that he was not interviewed for the position.

Therefore, Lopos fails to state a claim for retaliation based on protected speech. For the same reason, Lopos fails to demonstrate that he is entitled to judgment on the pleadings on his retaliation claim.

### B. Race and Age Discrimination Claims

Defendant moves to dismiss Lopos's race and age discrimination claims on the grounds that Hughes may not be subject to individual liability under Title VII, the ADEA, or the CFEPA, and that Lopos fails to plead sufficient factual allegations to support claims for race or age discrimination.

The Court construes Lopos's race discrimination claim as arising under Title VII and the Connecticut Fair Employment Practices Act ("CFEPA"), and his age discrimination claim as arising under the ADEA and the CFEPA. Title VII prohibits an employer from discriminating against an employee because of the employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). The ADEA prohibits discrimination on the basis of age. 29 U.S.C. § 623. The CFEPA similarly prohibits discrimination in employment on the basis of race or age, among other characteristics. Connecticut General Statutes § 46a-60(b)(1).

Under Title VII a prima facie case of discrimination requires a showing that (1) the plaintiff is part of a protected class under Title VII; (2) he was qualified for the position; (3) he suffered an adverse employment action, i.e., he was denied the job; and (4) the denial occurred under circumstances giving rise to an inference of discrimination. *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015); *see also Coger v. Conn. Dept. of Pub. Safety*, 143 Fed. Appx. 372, 374 (2d Cir. 2005) (applying the *McDonnell Douglas* burden-shifting framework to a failure to hire claim.

Similarly, the elements of a claim for age discrimination under the ADEA or the CFEPA are that 1) the plaintiff was within the statutorily protected age group; 2) he was qualified for the position; 3) he was subjected to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

Individuals are not subject to liability for race or age discrimination under Title VII, the ADEA, or the CFEPA. *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) ("[I]ndividuals are not subject to liability under Title VII."); *Gibbs v. City of New Haven*, 544 F. Supp. 2d 119, 125 (D. Conn. 2008) ("The ADEA precludes holding individuals liable even where they create the alleged discrimination."); *Mercer v. Brunt*, 272 F. Supp. 2d 181, 188 (D. Conn. 2002) (". . . § 46a-60a does not impose liability on individual employees.") (citing *Perodeau v. City of Hartford*, 259 Conn. 729, 743 (2002)). Lopos may therefore not maintain a claim for race or age discrimination against Hughes, an individual, and his race and age discrimination claims fail for that reason alone.

Lopos also does not plead facts to allege adequately that his not being hired for the paraprofessional position occurred under circumstances giving rise to an inference of race or age discrimination.

7

To support his claim of race discrimination, Lopos alleges that he left blank the box on the application in which he could have indicated his race because he wanted the interviewing and hiring process to be "based on the applicant's qualifications, credentials, and content of character and not on the color of one's skin or one's ethnicity." (ECF No. 34 at 1.) Lopos does not allege his race and does not allege that Hughes or the individual who made hiring decisions at the East Haven Schools knew of his race. Further, as he alleged that he did not provide his race in the application, the Court cannot reasonably infer that Hughes or anyone at the East Haven Schools was aware of his race.

Lopos also alleges that the "East Haven Schools administration team interviewed five candidates, one white male, two Hispanic males and two African American males." (ECF No. 34 at 1.) Lopos does not allege the race of the individual who was hired for the position, how animus toward Lopos because of his race caused him not to be interviewed or hired for the position, or any other facts from which the Court could draw the reasonable inference that his failure to be interviewed or hired was due to race discrimination. His claim is even less plausible given that an allegedly diverse pool of applicants was interviewed for the position. Lopos therefore fails to adequately plead a claim for race discrimination.

The only allegations Lopos provides in support of his age discrimination claim are that "not one Senior Citizen was interviewed for the In-School Suspension position" and that "discovery will show that [Lopos] was not interviewed and considered less favorably because of age." (ECF No. 34 at 1.) Lopos does not allege his age, that Hughes was aware of his age, or any other fact that could plausibly give rise to an inference of discrimination on the basis of age. "An ADEA claim need not contain every supporting detail, but it must inform the court and the defendant of the reasons the plaintiff believes that age discrimination" has occurred. *Caesar v.*

*Hartford Hosp.*, 46 F. Supp. 2d 174, 178 (D. Conn. 1999) (dismissing an ADEA claim where the plaintiff "relie[d] on conclusory allegations" that defendant discriminated against her on the basis of age). Thus, even if Lopos had named a proper defendant for the purpose of bringing an age discrimination claim, he has not set forth any facts that suggest that age discrimination occurred.

Finally, while Lopos alleges that he filed a discrimination charge alleging retaliation for his past lawsuits with the EEOC, Lopos has not alleged that he filed a charge of either race discrimination or age discrimination with the EEOC or the Connecticut Commission on Human Rights and Opportunities ("the CHRO"). "Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). The Second Circuit has held, however, that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Id.* (internal quotation marks and citations omitted). Lopos has not alleged that he administratively exhausted his race and age discrimination claims, or that the claims are reasonably related to his retaliation claim based on his prior litigation.

For these reasons, Lopos fails to state claims for either race or age discrimination. For the same reason, Lopos has failed to establish that he is entitled to judgment on the pleadings on his race and discrimination claims.

**IV.     Conclusion**

For the reasons stated above, the motion to dismiss (ECF No. 44) is GRANTED. The motion for judgment on the pleadings (ECF No. 45) is DENIED. Because the Court had previously given Lopos an opportunity to amend the complaint and had warned that the Court would not allow further amendments to the complaint (ECF No. 35), the Complaint is DISMISSED and the Clerk

is instructed to close this case. The motion for a court-ordered settlement conference (ECF No. 41), motions to compel (ECF Nos. 47, 50, 52, 55), motion for in camera review of documents (ECF No. 49), motion to strike (ECF No. 51), and motion requiring defendant to request a telephonic pre-motion conference (ECF No. 60) are DENIED as moot.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
February 21, 2018